IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AT&T Mobility Services, LLC,

Plaintiff,

vs.

VILLAGE OF CORRALES,

Defendant.

No. 13-CV-0785-MV-SCY

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff AT&T Mobility Services, LLC's ("AT&T") and the Village of Corrales's (the "Village" or "Corrales") cross-motions for summary judgment [Docs. 29, 32]. The Court, having considered the motions, briefs, relevant law, and being otherwise fully informed, finds that AT&T's Motion for Summary Judgment [Doc. 29] is well-taken therefore will be **GRANTED** and that the Village's Motion [Doc. 32] is not well-taken and therefore will be **DENIED.**

## BACKGROUND

As an initial matter, the Court's earlier Memorandum Opinion and Order [Doc. 42] on the Village's Motion to Exclude [Doc. 19] moots a significant portion of the instant dispute. Pursuant to its prior disposition, the Court will consider properly-submitted materials outside of the record on appeal ("RA") with respect to AT&T's argument that Corrales's conduct has effectively prohibited its provision of wireless service. *See generally* Doc 42. Consequently, the Court will treat facts 21-26, 28, 29, 35, 26, 38, and 44 as uncontroverted because the Village's

1

sole basis for objection was the assumed limitation of the scope of the Court's analysis. *See* Doc. 35 at 2; Doc. 37 at 2. On this basis, the Court describes the facts as follows:

This case centers on AT&T's application for a "special use permit" that would allow it to build a new telecommunications tower on the Proposed Site, despite the prevailing zoning restrictions. Plaintiff's Statement of Undisputed Material Fact ("PSUMF") ¶¶ 1-2. Corrales ultimately denied this request. *Id.* ¶¶ 9-11. Plaintiff AT&T then initiated this suit, arguing both that the Village's actions had, in effect, prohibited it from furnishing wireless service in the target area and that the administrative procedure upon which the Village relied was flawed. *See generally* Doc. 1. Now, the parties cross-move for summary judgment on each claim in Plaintiff's Complaint.

There is currently a "gap" in AT&T's "reliable service in the area around the proposed site" of the cell tower. PSUMF ¶ 21. This "gap" was measured empirically through a "drive test" along Corrales Road, which demonstrated "weak and inconsistent coverage in the area of the proposed site," such that, in this area, AT&T's network was unable to provide reliable in-building or in-vehicle service. *Id.* ¶¶ 22-23. Evidently, this area is served only by "distant cell sites" which means that there is "no dominant wireless site in the area" and that, as a result, this area experiences an "unacceptable level of interference," which may manifest as "trouble establishing or maintaining a call." *Id.* ¶ 25. The Village attempts to recast this as "***too much*** ability to reach a telecommunications site from the area," or as posing an issue only for a "relatively fast-moving user," but this interpretation both grossly misconstrues the facts as articulated by AT&T and misunderstands the nature of interference in wireless networks. Doc. 35 at 5 (emphasis original).

The Proposed Site is, because of the restrictive zoning regulations imposed by the Village, one of the few feasible parcels of land on which to build a telecommunications facility in the relevant geographic location.  *See* PSUMF ¶¶ 26-33.  *See also* Defendant's Statement of Uncontested Material Facts[1] ("DSUMF") ¶¶ 2-5.  AT&T recognizes that that there are three potential alternative sites where the cellular facility could be located, but notes both logistical and technical issues with these choices.  First, the Salce Park parcel is surrounded entirely by "private residences" such that "any facility would be highly visible to the surrounding residences."  PSUMF ¶¶ 35-36.  Further, a facility at Salce Park "would leave a large portion of the target area without reliable in-building coverage" that would have received better reception if the tower were placed at the Proposed Site.  *Id.* ¶ 38.  Second, the parcel on Quiet Lane is also bordered by private residences without any adjacent commercial property.  *See id.* ¶ 39.  The Quiet Lane location is also deemed too close "to an existing AT&T site, and would compete with this site for the same customers, causing interference and severe uneven and under-utilization of both sites."  *Id.* ¶ 40.  Moreover, the physical location of the site at the "rim of the western escarpment" means that a ridge separates the Quiet Lane location and the target coverage area.  *Id.* ¶¶ 41-42.  Third and finally, the parcel located near the firehouse is *also* "surrounded by private residences" and would "provide far less coverage than the proposed site, leaving much of the area to the south" with insufficient coverage.  *Id.*  ¶¶ 43-44.

By contrast, even the Village concedes that AT&T's projection shows that if the tower were installed at the proposed site, nearly the entire target area would receive "optimum" coverage.  *See* DSUMF ¶ 30.  Defendant complains that much of this information was not

---

[1]  In its Motion for Summary Judgment [Docs. 32, 33] Defendant titles this section "Statement of Material Facts Not Reasonable in Dispute;" in the interest of consistency, however, the Court has elected to conform the naming convention.

3

supplied to the village during the hearing.  *Id.* ¶¶ 17-29.  This, however, is irrelevant with respect to AT&T's effective denial claim, which is not limited to the record on appeal.

## DISCUSSION
**I.   Summary Judgment**

Federal Rule of Civil Procedure 56 directs the Court to enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's analysis is no less stringent where, as here, the parties file cross-motions for summary judgment.  *See Hospice of New Mexico, LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1286 (D.N.M. 2010) (explaining that "cross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist. They require no less careful scrutiny than an individual motion.") (internal quotation marks omitted).  Even so, when faced with cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).  Further, "[t]o the extent the cross-motions overlap," the Court is permitted to "address the [parties'] legal arguments together." *Berges v. Std. Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

In all other respects, cross-motions for summary judgment are evaluated according to the well-worn standard for individual Rule 56 motions.  Hence, in evaluating the motions before it, the Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014).  In judging whether a *genuine* issue of material fact exists, the Court asks "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"

4

and "if under the substantive law [the fact] is essential to the proper disposition of the claim." *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (internal quotation marks omitted). Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). Here, because the Court finds that the first issue raised in AT&T's motion is dispositive, the Court need only address the parties' arguments with respect to that question.

## II.     The Telecommunications Act of 1996 and Provision of Personal Wireless Service

The parties agree that resolution of AT&T's first claim is governed by Section 332(c) of the Telecommunications Act ("TCA" or the "Act"). *See* Doc. 31 at 8; Doc. 33 at 9-10; 47 U.S.C. § 332(c). That portion of the Act provides that while local governments may regulate "the placement, construction, and modification of personal wireless service facilities," such regulation cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7).

Here, there is no dispute that AT&T's proposed tower and base station qualify as a "wireless service facility," that AT&T provides "personal wireless services," nor that the Village's decision and zoning ordinances have, in some way, come into conflict with AT&T's plan. *See, e.g.*, PSUMF ¶¶ 1, 4. The sole questions, then, are: (1) whether Corrales's conduct has "the effect of prohibiting the provision of personal wireless services" and, if it does, (2) whether AT&T's plan constitutes "the least intrusive" means of remedying the service gap at issue. *Nextel West Corp. v. Town of Edgewood, N.M.*, 479 F. Supp. 2d 1219, 1237 (D.N.M. 2006) (internal quotations omitted); *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 20 (1st Cir. 2002) (stating that "[s]everal courts have held that local zoning decisions and ordinances that prevent the closing of significant gaps in the availability of wireless services

5

violate the statute."). *See also Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 48 (1st Cir. 2009) ("When a carrier claims an individual denial is an effective prohibition, virtually all circuits require courts to (1) find a 'significant gap' in coverage exists in an area and (2) consider whether alternatives to the carrier's proposed solution to that gap mean that there is no effective prohibition.").

      a.  *The Village has effectively prohibited AT&T from providing wireless service.*

Neither party alleges that there has been an overt prohibition on the provision of wireless service in Corrales. However, the parties both recognize that a decision by the Village preventing AT&T from closing a "significant gap" in its existing service would be cognizable in an action brought under section 332(c). *See* Doc. 31 at 9; Doc. 33 at 13. *See also Edgewood*, 479 F. Supp. 2d 1237 ("Plaintiff still may succeed on its prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II) by showing [that local ordinances and decisions] prevent the closing of significant gaps in the availability of wireless services."). Hence, the Court is first directed to resolve whether, on the facts properly before it, there is a dispute of material fact as to the existence of a "significant gap" in AT&T's service. The Court finds that there is no genuine dispute and that AT&T is entitled to judgment as a matter of law.

Unfortunately, the jurisprudence in this area is not the model of clarity; the "means to determine whether a gap is significant … is far from clear" and "each case must be viewed on its own." *Orange County-Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, -- F. Supp. 3d -- , 2015 WL 409260, at *19 (S.D.N.Y. Jan. 30, 2015). In evaluating the significance of a gap in service, "district courts have looked at the gap's physical size, the number of customers affected by the gap, the location of the gap, and drop call or failure rates;" courts have also "considered whether the purported gap affects a plaintiff's ability to provide outdoor, in-vehicle, and in-

building coverage." *Id.* (collecting cases).  This "totality of the circumstances" analysis both fits within Tenth Circuit precedent and comports with the Court's understanding of the flexible approach taken by the TCA to the provisioning of wireless coverage.  *See, e.g.*, *T-Mobile Central, LLC v. Unified Gov't of Wyandotte Cnty., Kan. City, Kan.*, 546 F.3d 1299, 1306 (10th Cir. 2008) ("While Congress expressly preserved local zoning authority over the construction of personal wireless service facilities when it enacted the TCA, Congress adopted the TCA in order to promote competition and higher quality in telecommunications services and to encourage the rapid deployment of new telecommunications technologies.") (citation omitted).

In this regard, the Village's arguments are largely inapposite.  First, it relies heavily on the claim that AT&T did not demonstrate *at the administrative hearing* that a significant gap in coverage exists.  *See* Doc. 33 at 16-17.  This argument was largely mooted by the Court's earlier decision, which explained that the Court would consider evidence beyond the record on appeal when evaluating AT&T's effective prohibition claim.  *See generally* Doc. 42.  Second, the Court's understanding of the ambit of effective prohibition claims under the TCA demands flat rejection of the Village's implication that improving signal strength from "In-Vehicle" to "In-Building" is not a sufficient to constitute a "significant gap."  *See* Doc. 33 at 17.  While such improvements might not, *per se*, constitute cognizable gaps in a provider's wireless service, given the emphasis placed on deploying wireless technology and encouraging competition between providers, the Court finds that these gradations in service should be considered in its analysis.  This perspective has a similar effect on the Village's argument that "provid[ing] more convenient coverage for persons driving along Corrales Road" does not constitute the filling of a coverage gap; plainly, ensuring reliable reception in vehicles constitutes part of providing adequate wireless service in a given area.

By contrast, AT&T presents a compelling argument, based on undisputed evidence, that the service gap in the target area is "significant" for the purposes of the TCA.  First, the gap covers a populated and well-traveled area approximately two miles across.  *See* PSUMF ¶¶ 22-23, 27.  Second, the absence of a dominant server in the area means that signals from several other towers interfere with one another and cause issues with establishing or making telephone calls.  *See id.* ¶¶ 24-25.  Third, much of the affected area includes a residential zone without reliable in-home coverage.  *See id.* ¶¶ 26-27.  The ineluctable conclusion from these facts is that the target area represents a "significant gap" in AT&T's wireless service.  The Court is buttressed in its decision by recognition of the flexible nature of the Act and the growing importance of mobile technologies in American life; it is simply anachronistic to insist that unreliable in-building or in-vehicle coverage does not contribute to a "significant gap" in wireless service.  The Court holds that the Village's decision prevents AT&T from filling a significant gap in its service, and, therefore, constitutes an effective prohibition on providing wireless service.

      b.  *AT&T has proposed the least intrusive manner to fill the gap in its service.*

Even so, to prevail on its "effective prohibition" claim, AT&T must show that "the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve."  *Edgewood*, 479 F. Supp. 2d at 1237 (quoting *APT Pittsburgh Ltd. P'ship v. Penn Tp. Butler Cnty. of Pa*, 196 F.3d 469, 480 (3d Cir. 1999)).  To do so, AT&T must demonstrate that a "good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc."  *Id.* at 1237-38.

On the undisputed facts before the Court, it is plain that AT&T has done so.  First, AT&T considered the height of the antenna and decided that while an 80-foot tower would be preferable given the topography of the target area, a 65-foot monopole would be sufficient to meet the technical requirements of the facility.  *See* PSUMF ¶¶ 17, 28-29.  *Contra* DSUMF ¶ 31-32; Doc. 35 at 7.  Further, given the height required to meet the physical requirements of the surrounding landscape, the local zoning restrictions limiting buildings to 26 feet in height, and the location of the target area, it is apparent placement of the antennae on existing structures would not be technically feasible.  *See* DSUMF ¶ 4-5.  *See also* Doc. 31-1 ¶¶ 7-10.

Further, AT&T offered to house the antenna array in a "shroud" in order better to conceal the electronic components of the facility and address some of the aesthetic concerns animating opposition to the proposal.  *See* PSUMF ¶ 2.  Similarly, AT&T has explained that the tower would not be "lighted," which, presumably, forms part of the general concession it has made to ensure that the tower is as unobtrusive as is feasible.  *Id.* ¶ 7.  Moreover, despite Corrales's objection to the substance of the submitted property value study, it is apparent that AT&T investigated the potential implications of a monopole facility on residential property values, which appears to be both an independent concern and a proxy for aesthetic interests.  *Id.* ¶ 20.  *See also* Doc. 35 at 2; DSUMF ¶¶ 47-50.  For these purposes, the Court need not consider whether the conclusions of the study are accurate or relevant, but rather that the study forms part of the "good faith effort" AT&T made to conform its proposal to the Village's concerns.

Finally, as discussed above, AT&T evaluated at least three alternative sites and concluded that each would have been comparably intrusive and less effective in covering the target area.  *See also* DSUMF ¶ 36; Doc. 31 at 15-16.  While the Village complains that each of the sites that AT&T considered is located "at the center of the search ring," AT&T *did* consider

9

"sites to the west" of this area. *Compare* DSUMF ¶ 41-43 *with* Doc. 31-1 ¶ 38-31. Moreover, it stands to reason that proposals for a wireless facility designed to provide coverage to a given target area would, as a matter of technical necessity, center on that geographic area. *Cf.* Doc. 31 at 14-15. Stated differently, AT&T has not made "a mockery" of the "least intrusive means" requirement, nor issued an "ultimatum;" the Village merely refuses to accept that evidence not contained in the record on appeal is admissible on summary judgment and that this material demonstrates that AT&T has evaluated alternative sites. *See* Doc. 33 at 18-19. Thus, it is apparent that AT&T has considered the concerns of the Village and its residents, evaluated alternatives, and articulated why its plan is the least intrusive feasible design which will also adequately address the gap in its service. The Court finds that resolution of this issue is dispositive and therefore will treat the remaining two claims as moot.

      c.  *AT&T is entitled to an injunction.*

In its memorandum, AT&T requests that the Court enter an injunction "requiring the Village to grant AT&T's application and any other regulatory approvals necessary to construct its proposed facility." Doc. 31 at 31. Such relief is consistent with the interpretation of the TCA articulated by other courts. *See, e.g.*, *T–Mobile Northeast LLC v. Inc. Vill. of E. Hills*, 779 F. Supp. 2d 256, 275 (E.D.N.Y.2011) (explaining that "Although the TCA does not specify a remedy for violations of [this] subsection ... the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits.") (internal quotation marks omitted) (ellipsis original). *See also City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 at 123 n.3 (2005) ("[T]he majority of district courts ... have held that the appropriate remedy for a violation of the TCA is a mandatory injunction") (internal quotation marks omitted). The Village has not pointed to any authority

that would suggest that an injunction is inappropriate where the district court found that a plaintiff had prevailed on its effective prohibition claim.  Indeed, *National Tower*, a case upon which Corrales relies, expressly states that "in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order, like the one the district court issued in this case, instructing the board to authorize construction."  *Nat'l Tower*, 297 F.3d at 21-22.

> The Court is sympathetic to Corrales's argument that an injunction "would effectively sanction Plaintiff's improper procedural sandbagging in this case wherein Plaintiff did not present its case fully before the village."  Doc. 35 at 14.  This argument, however, merely points to a difficulty in the governing law, rather than a substantive reason why injunctive relief is unavailable to AT&T.  Plaintiff has successfully made out an effective prohibition claim under the TCA; there is nothing more for the local government to say on the matter.  Further, an effective prohibition claim is an independent federal law cause of action, rather than a mere review of a state decision; it would be illogical to *remand* it to an agency in which it did not originate.  *Cf. Nat'l Tower*, 297 F.3d at 22 (effective prohibition claims are "questions that a federal district court determines in the first instance without any deference to the board.")

## CONCLUSION

The Court finds that, on the basis of uncontested facts properly before it, AT&T has demonstrated that the Village effective prohibited it from providing wireless service, in violation of the TCA.  Consequently, the Court will enter summary judgment in favor of AT&T and order that the Village approve immediately whatever permits AT&T may require to construct the wireless facility.

**IT IS THEREFORE ORDERED** that AT&T's Motion for Summary Judgment [Doc. 29] is **GRANTED** and that the Village's Motion for Summary Judgment [Doc. 32] is **DENIED.** Dated 25th day of March, 2015.

_____
**MARTHA VAZQUEZ**
UNITED STATES DISTRICT JUDGE